**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE COMMUNITY CLINIC INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:20-cv-3208-PX |
| HEALTHGRID, LLC, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court in this breach of contract action is the motion to dismiss filed by Defendants HealthGrid, LLC, and Allscripts Healthcare, LLC, and brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 22.  The matter has been fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the motion to dismiss is granted in part and denied in part.

**I.   Background**

Plaintiff the Community Clinic Inc., ("CCI"), a community health center, primarily serves indigent patients in Prince George's and Montgomery counties in Maryland.  ECF No. 21 ¶¶ 1-2.  Defendant Health Grid, LLC, ("HealthGrid") is a healthcare technology company headquartered in Orlando, Florida.  *Id.* ¶ 3.  Defendant Allscripts Healthcare, LLC, ("Allscripts") is the parent company of HealthGrid.  *Id.* ¶ 5; ECF No. 11 at 2.  Allscripts acquired HealthGrid in May 2018, and in a related press release, touted that Allscripts would "integrate the HealthGrid capabilities into its FollowMyHealth platform, enabling provider organizations to reach 100% of their patient populations without requiring their healthcare customers to sign into a portal."  ECF No. 21 ¶¶ 7, 23.

Throughout the business relationship between CCI and HealthGrid at the heart of this

case, HealthGrid employees identified themselves as working for Allscripts; they used Allscripts email accounts and Allscripts signature blocks. *See, e.g.*, ECF No. 23-4. When CCI had questions about billing terms, HealthGrid directed such inquiries to Allscripts. ECF No. 23-9 at 2. And when CCI needed certification of its collaboration with HealthGrid, CCI was directed to Allscripts' legal department who produced the certification. *Id.*

In July 2018, HealthGrid and CCI began negotiations to provide updated computer software for CCI's Patient Appointments & Reminders ("PAR") system, a program that scans CCI's medical records and sends patients automatic reminders for upcoming appointments, and its Patient Portal, which provides patients digital access to their medical records. ECF No. 21 ¶¶ 14–15, 19. On July 17, 2018, Dr. Sonya Bruton, Associate Chief Executive Officer and Chief Operating Officer for CCI, met with HealthGrid representatives to discuss their proposed updates to the PAR system. *Id.* ¶ 24. At that meeting, Dr. Bruton made clear that the upgrades CCI sought must not only provide patients with reminders but must also interface with CCI's existing patient portal and scheduling systems. *Id.* ¶¶ 27–28. Put differently, CCI required a "bi-directional" system that would automatically populate CCI's existing medical records with the information that patients provided using the updated PAR system. *Id.* HealthGrid confirmed that it could meet these demands. *Id.* ¶ 30.

In September 2018, CCI and HealthGrid struck a deal, as memorialized in the "Solution Agreement" (the "Agreement") and incorporated "Statement of Work," ("SOW"). ECF Nos. 21 ¶¶ 34–37; 22-2. The parties agreed that "HealthGrid will provide use of applicable software and mutually agreed upon services to [CCI] as described in the attached SOW(s)." ECF No. 22-2 ¶ 1. Specifically, HealthGrid would provide such patient-centered applications as a mobile electronic appointment reminder system; a secure mobile messaging system; mobile check-in

2

and appointment cancellation services; deployment of satisfaction surveys to patients; and creation of a secure patient portal for patients to view, download, and transmit health information. *Id.* For staff, CCI expected to receive an on-demand messaging system that staff could use to communicate with patients, and an internal "gap-in-care" engine to identify patient subpopulations for quality improvement measures. *Id.*

As for the timing of the services, the SOW provided that the parties would "mutually agree to an implementation and deployment plan . . . [that would] be live with at least one service within 120 days of contract signing," or by January 2019. ECF Nos. 21 ¶ 36; 22-2 at 6. Further, the parties agreed to choose a date for the "Project Kick-off," as well as a mutually agreed upon set of substantive and timing milestones as set forth in a "Project Plan." ECF No. 22-2 ¶ 4. HealthGrid also agreed to use "commercially reasonable efforts to avoid delays in the Project schedule." *Id.*

CCI and HealthGrid held the "Project Kick-off" meeting on October 18, 2018. ECF No. 21 ¶ 43. At the meeting and per the terms of the Agreement, HealthGrid presented to CCI its Project Plan, which defined the project's scope and timeline. *Id.* ¶¶ 45–46. The Project Plan specified that the appointment optimization and post-care summary components would be completed in January 2019; the Gap-in-Care campaign and satisfaction surveys by March 2019; and the electronic check-in and patient portal by April 2019. *Id.* ¶ 46.

Immediately after the Project Kick-off, HealthGrid encountered difficulties in implementing the Project Plan. As a result, none of the promised services were delivered within 120 days or within the milestones set forth in the Project Plan. ECF No. 21 ¶¶ 41, 47. Chief among the difficulties was implementing a "bi-directional" PAR system. *Id.* ¶¶ 49, 67–99. At the time, CCI's used an electronic records program produced by Virence Health Technologies

3

("Virence"). *Id.* ¶¶ 54–55. HealthGrid proposed that it could implement bi-directional functionality in the PAR system by either using the current Virence platform or, if necessary, implementing different administrative and scheduling technology. *Id.* ¶ 66. Unfortunately, Virence notified HealthGrid and CCI that the current system would not support bi-directionality, but offered to implement a different Virence system that could achieve CCI's desired functionality. *Id.* ¶¶ 66–74. HealthGrid, in response, began exploring other options. *Id.* ¶¶ 75–80.

HealthGrid Project Manager, Claire Gagarin, stayed in close contact with CCI personnel about the project's progress generally and with respect to the difficulties in implementing a bi-directional PAR system. *See, e.g.,* ECF No. 21 ¶¶ 48–58, 80, 86.[1] Within a month from kickoff, Gagarin informed CCI that although she expected CCI would receive the bi-directional functionality it sought, the project would not be completed by the deadlines originally promised. ECF Nos. 21 ¶¶ 84–98; 23-8; 23-9. Gagarin also represented that HealthGrid continued to make progress on implementing the PAR system but could not give a firm alternative timeline for completion. ECF No. 21 ¶¶ 84–89.

By March 27, 2019, HealthGrid forecasted to CCI that the PAR system would be completed by May 2019. ECF Nos. 21 ¶ 103; 23-9 at 4. The next day, HealthGrid invoiced CCI for $25,000 for work performed on the "Implementation & Setup" phase of the project, and for $83,640 for work on the "Annual Pre Care, Post Care, and Point of Care" phase. ECF No. 21 ¶ 104. Relying on HealthGrid's representations that HealthGrid was on track to complete the bi-directional PAR system, CCI paid the invoices. *Id.* ¶ 105.

---

[1] The Court views the email correspondence between Gagarin and CCI as incorporated by reference into the Amended Complaint. *See Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 585 (D. Md. 2019) (explaining "a court may consider documents that are "explicitly incorporated into the complaint by reference").

A few weeks later, in mid-April 2019, Gagarin twice telegraphed to CCI that the "technical requirements" for the PAR system were "complete." ECF No. 21 ¶¶ 106–07. But by May 23, 2019, Gagarin reversed course, informing CCI that the PAR system had yet to be completed. *Id.* ¶ 108.

By this point, HealthGrid had failed to fully deliver on any of the services listed in the SOW, including the PAR system. ECF No. 21 ¶¶ 36, 41, 47, 109. In response, CCI terminated the contract on June 6, 2019. *Id.* ¶ 110. CCI thereafter attempted to contact HealthGrid to confirm the contract termination, but HealthGrid never responded. *Id.* ¶¶ 111–12.

On September 24, 2020, CCI filed suit in the Circuit Court for Prince George's County against HealthGrid and Allscripts for breach of contract, negligent misrepresentation, and fraud. ECF No. 1-2. Defendants timely removed the case to this Court and next moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 1, 18. CCI, in turn, filed a timely Amended Complaint, pursuing a single breach of contract claim based on the delay and ultimate failure to deliver the various software services under the Agreement and SOW. ECF No. 21. As relief, CCI seeks $109,140 in compensatory damages, punitive damages, and attorneys' fees.

Defendants now move to dismiss the Amended Complaint. ECF No. 22. Defendants specifically move to dismiss Allscripts as a defendant. Both Defendants also contend that the contract claim fails as a matter of law. Defendants lastly maintain that if the contract claim survives challenge, CCI is not entitled to punitive damages or attorneys' fees. The Court considers each argument in turn.

## II.   Standard of Review

A motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the

sufficiency of the complaint.  In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A plaintiff must provide sufficient detail to show that he has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 2736 (2020).

### III.   Analysis

#### A.  Choice of Law

The Agreement expressly provides that any dispute arising between HealthGrid and CCI "shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without regard to its conflicts of law rules." ECF No. 22-2 ¶ 13; *cf.* ECF No. 21 ¶ 10.[2]

---

[2] Per the Agreement, HealthGrid and CCI also appeared to have "consent[ed] to the jurisdiction and venue of the state and federal courts located in Orange County, Florida for any dispute arising out of this Agreement." ECF No. 22-2 ¶ 13.  Yet neither party appears prepared to invoke this provision.  *See* ECF No. 21 ¶ 10 (explaining that the parties did not agree to Florida as the exclusive venue for any litigation premised on the contract).  Thus, the Court considers any related argument as to the propriety of this court's personal jurisdiction or venue waived.  *See, e.g.*, *Seidel v. Kirby*, 296 F. Supp. 3d 745, 748 (D. Md. 2017) (citing Fed. R. Civ. P. 12(h)) ("Objections to personal jurisdiction and venue can be waived if they were available to the defendant and not raised in the defendant's first motion to dismiss under Rule 12(b)).").

The Court thus applies Florida law to the contract dispute between CCI and HealthGrid. *Acciai Speciali Terni USA, Inc. v. M/V BERANE*, 181 F. Supp. 2d 458, 462 (D. Md. 2002) ("Forum selection and choice of law provisions are prima facie valid and enforceable.") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)). As to Allscripts, the parties maintain that because it was not a signatory to the contract, this Court must apply Maryland law to the claims against the parent corporation. *See* ECF Nos. 22-1 at 12 n. 7; 23 at 7–8. The Court agrees and will apply Maryland law as to Allscripts.

### B. Allscripts as a Proper Party

Defendants first argue that because Allscripts is not a party to the contract, it cannot be held liable for HealthGrid's purported contractual breach. This is so, says Allscripts, because the Amended Complaint has not made plausible that corporate formalities between Allscripts and HealthGrid may be ignored, or that Allscripts is otherwise vicariously liable for its subsidiary's contractual breach. ECF No. 22-1 at 11–16. CCI responds that the factual allegations make clear that HealthGrid acts as the agent of Allscripts, and thus, dismissal is not proper. ECF No. 23 at 7–10.

As to the theory that the corporate veil between HealthGrid and Allscripts may be pierced such that each is liable for the acts of the other, Maryland takes a relatively restrictive approach, piercing the corporate veil in this situation only when it is "necessary to prevent fraud or enforce a paramount equity." *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 759 (D. Md. 2010) (quoting *Dixon v. Process Corp.*, 38 Md. App. 644, 654 (1978)); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 307 (Ct. Spec. App. 1999). The Court may disregard corporate formality where the subsidiary company is merely an

"alter ego" of the parent company. *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 734 (2004). A subsidiary may be considered the alter ego of the parent corporation when the two fail to observe corporate formalities, such as the parent treating the subsidiary's property "as if it were their own," or when the subsidiary is insufficiently capitalized, does not issue stock, or operates at a loss. *Hildreth*, 378 at 734–35. That said, Maryland courts generally avoid piercing the corporate veil and assigning liability to the parent corporation absent some evidence of collusion or fraud between it and the subsidiary. *See Iceland Telecom, Ltd. v. Info. Sys. & Networks Corp.*, 268 F. Supp. 2d 585, 589–91 (D. Md. 2003).

As to imputing liability to Allscripts under an alter ego theory, the Amended Complaint falls short. At best, the Amended Complaint describes Allscripts as "control[ling] the actions of [] HealthGrid," and notes that HealthGrid acted on Allscripts' behalf. ECF No. 21 ¶¶ 6, 9, 126. But no facts support piercing the corporate veil because Allscripts has not made plausible that corporate formalities should be disregarded to "prevent fraud" or achieve "paramount equity." *Antonio*, 701 F. Supp. 2d at 759.

However, under an agency theory of liability, claims against Allscripts survive challenge. In Maryland, an agency relationship exists where (1) the "agent is subject to the principal's right of control," (2) "the agent has a duty to act primarily for the benefit of the principal," and (3) "the agent has the power to alter the legal relations of the principal." *Brooks v. Euclid Sys. Corp.*, 151 Md. App. 487, 506–07 (Md. Ct. Spec. App. 2003). These factors are neither exclusive nor essential; rather they "should be viewed within the context of the entire circumstances of the transaction or relations." *Green v. H & R Block, Inc.,* 355 Md. 488, 735 (1999). "'Generally, the existence and scope of agency relationships are factual matters,' and are therefore often appropriately left to the jury." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643,

659–60 (4th Cir. 2019) (quoting *Metco Products, Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)); *accord Proctor v. Metro. Money Store Co.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008).

The parties agree that HealthGrid is wholly owned by Allscripts. ECF No. 11 at 2. Further, Allscripts has plainly announced that it has "integrate[d]" HealthGrid's technological capabilities into its own platform. ECF No. 21 ¶ 7. But most persuasively, the Amended Complaint makes plausible that HealthGrid and Allscripts performed on the contract in tandem. The employees working on the project for HealthGrid had Allscripts email addresses and signature blocks, suggesting they were acting on behalf of Allscripts as much as they were HealthGrid. *See, e.g.*, ECF No. 23-4. Additionally, CCI's billing and legal inquiries were directed to Allscripts' billing and legal departments, making plausible that Allscripts had the power to alter HealthGrid's legal relationship with CCI. ECF No. 23-9 at 2. At this stage, it is certainly plausible that Allscripts controlled, and ultimately benefited from, HealthGrid's work under the contract. Formal discovery, to be sure, will better reveal the extent of Allscripts' involvement in the performance under the contract. But at this stage, Allscripts must remain in the case. The motion to dismiss is denied.

### C. Sufficiency of Contract Claim

The Court next turns to the sufficiency of CCI's contract claim. The Amended Complaint must plausibly aver the existence of a contractual obligation, a material breach, and damages. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007) (citing *Knowles v. C.I.T. Corp.*, 346 So.2d 1042, 1043 (Fla. App. 1977)). The parties do not dispute that a valid agreement existed between HealthGrid and CCI. ECF Nos. 21 ¶ 37; 22-1 at 7. The Amended Complaint further makes plausible that those contractual obligations

included HealthGrid providing "at least one service live within 120 days of contract signing," as well as other subsidiary obligations as set forth in the "Project Plan" which too, had agreed-upon deadlines for performance.  *See* ECF No. 22-2 at 6.  Lastly, the Amended Complaint avers that HealthGrid breached the contract by failing to provide the deliverables on time or at all.  ECF No. 21 ¶¶ 116–25.

In challenging CCI's breach of contract claim, Defendants focus their attention only on HealthGrid's averments on failing to deliver a "bi-directional" PAR system.  Defendants vigorously argue that the Agreement and SOW did not include provision of a bi-directional PAR system.  ECF No. 22-1 at 17–20.  But this argument artificially narrows CCI's claim.  To be sure, the Amended Complaint emphasizes the importance of the PAR system to CCI.  But CCI does not rest its claim on this failure to deliver alone.  Rather, the Amended Complaint avers that HealthGrid did not deliver any of the agreed upon software applications specified in the Agreement and SOW.  ECF No. 21 ¶¶ 116–25.  Nor did HealthGrid meet the express timing requirements in the SOW.  *See* ECF No. 22-2 at 6 (The parties "will mutually agree to an implementation and deployment plan for all 34 providers to be live with at least one service within 120 days of contract signing.").  Accordingly, the Court need not reach whether averments regarding failure to deliver a bi-directional PAR system are actionable because the claim otherwise survives regarding an array of other alleged breaches.

Undaunted, Defendants lastly contend that the "voluntary-payment doctrine," precludes CCI from pursuing the breach of contract claim.  ECF No. 22-1 at 20–22.  As an affirmative defense, the voluntary payment doctrine bars a contract claim where a defendant can demonstrate that the plaintiff had paid for the goods or services and, at the time of payment, fully knew the material facts that later form the basis of a contract claim.  *See, e.g., Ruiz v. Brink's Home Sec.,*

*Inc.,* 777 So. 2d 1062, 1064 (Fla. Dist. Ct. App. 2001).  But Florida courts have recognized that the voluntary payment defense, which is exceptionally fact-bound, is "not suited for resolution on a Rule 12(b)(6) motion."  *See Deere Constr., LLC v. Cemex Constr. Materias Florida, LLC*, 198 F. Supp. 3d 1332, 1342 (S.D. Fl. 2016) (citing *Schojan v. Papa John's Int'l Inc.*, 34 F. Supp. 3d 1206, 1210–11 (M.D. Fla. 2014)); *U.S. v. Cayman Vill. Condo. Ass'n, Inc.*, No. 12–61797, 2013 WL 1665846 at *1 (S.D. Fla. Apr. 17, 2013) ("[T]he issue of voluntary payment often entails a fact-based inquiry and is not suited for resolution at the dismissal stage.") (collecting cases).[3]  This case is no exception.

Taking the complaint facts as true, CCI makes plausible that it had not known the material facts supporting the claimed contract breach at the time it paid the March 2019 invoices.  From January to May 2019, Gagarin had assured CCI that the PAR system was "complete" or would be "completed" by May 2019.  At the same time, Gagarin often represented that glitches in its implementation would be resolved albeit on a somewhat amorphous timeline.  *See, e.g.,* ECF No. 21 ¶¶ 88, 89, 95–102.  Accordingly, HealthGrid invoiced CCI for payment, and CCI paid them, fully expecting HealthGrid to perform in accordance with the contract terms.  But by May 2019, the PAR system was still not completed; and Gagarin's ever shifting representations about its completion had lulled CCI into payment.  These facts alone undercut application of the voluntary payment doctrine.  *See id.* ¶¶ 101–05.  The claim must go forward.  The motion to dismiss is denied.

---

[3] CCI suggests that it is unclear whether Florida or Maryland law applies to Defendants' voluntary payment defense.  Application of Maryland law does not change the analysis.  Maryland, too, requires that a defendant prove the plaintiff had full knowledge of the facts and circumstances giving rise to claimed breach at the time it chose to pay under the contract.  *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 360–61 (2016).  Further, Maryland has made clear that the voluntary payment defense is not available where a plaintiff's payment was premised on misrepresentations or other mistakes of fact.  *See, e.g., Robinson v. Fountainhead Title Grp. Corp.,* 447 F. Supp. 2d 478, 494 (D. Md. 2006).

### D. Damages

As to damages, Defendants contend that CCI is not entitled to punitive damages or attorneys' fees on the breach of contract claim. ECF No. 22-1 at 20–22. Rightly, CCI has not disputed this argument. Under both Florida and Maryland law, punitive damages are unavailable in a breach of contract action. *See, e.g.*, *Connecticut Gen. Life Ins. Co v. Jones*, 764 So.2d 677, 682 (Fla. Dist. Ct. App. 2000) ("punitive damages for breach of contract are barred by Florida law"); *Schaefer v. Aetna Life & Cas. Co.*, 910 F. Supp. 1095, 1099 (D. Md. 1996) (In Maryland "punitive damages are not available in contract actions."). The same is true of attorneys' fees. *See, e.g., Ibru v. Ibru*, 194 A.3d 424, 442 (Md. Ct. Spec. App. 2018) (Maryland generally applies the American Rule under which the parties bear their own costs); *Bane v. Bane*, 775 So. 2d 938, 940 (Fla. 2000) (same as to Florida). Accordingly, CCI's claim for attorneys' fees and punitive damages is dismissed.

## IV. Conclusion

Defendants' motion to dismiss (ECF No. 22) is granted as to CCI's claim for punitive damages and attorneys' fees and is otherwise denied.

A separate order follows.

| | |
|---|---|
| 8/20/21 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |